UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEBORAH H GODFREY<br>other Administratrix of the Estate of<br>HENRY LEE GRAY, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>THE HEALTH AND HOSPITAL<br>CORPORATION OF MARION COUNTY<br>d/b/a ALLISONVILLE MEADOWS,<br>AMERICAN SENIOR COMMUNITIES LLC,<br>THE HEALTH AND HOSPITAL<br>CORPORATION OF MARION COUNTY<br>d/b/a Riverwalk Village,<br><br>Defendants. | No. 1:24-cv-00556-JPH-MJD |
| JOSEPH WILDER Consolidated from<br>Case No. 1:24-cv-557-TWP-MKK,<br><br>Consol Plaintiff. | |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Henry Gray was a resident at Allisonville Meadows, a skilled nursing facility. After his death, his estate sued the Health and Hospital Corporation of Marion County ("HHC") and American Senior Communities ("ASC") under 42 U.S.C. § 1983, alleging violations of the Federal Nursing Home Reform Act ("FNHRA"). Joseph Wilder is a resident at Riverwalk Village, another skilled nursing facility. He also brought § 1983 claims against HHC and ASC for alleged violations of the FNHRA. After the cases were consolidated, HHC and

ASC filed separate motions for summary judgment on Ms. Godfrey's claims, dkt. [73], and on Mr. Wilder's claims, dkt. [76]. For the reasons below, both motions are **GRANTED.**

## I. Facts and Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

### A. Mr. Gray

On May 1, 2022, Henry Gray was admitted to Allisonville, a healthcare facility owned by HHC and managed by ASC. Dkt. 74-3 at 48; dkt. 74-1 at 47 (Patel Dep. 47:12–47:22). Mr. Gray had pre-existing conditions, including dementia, hypertension, and kidney failure, and his care plan while at Allisonville classified him as a "Moderate Fall Risk." Dkt. 86 at 13, 20, 25.

In June 2022, Mr. Gray fell in the presence of nursing staff while attempting to "get into the wheelchair by himself" in the bathroom. Dkt. 74-2 at 50–51 (Godfrey Dep. 50:11–51:16). Later that month, he visited a hospital for confusion. Dkt. 86 at 16. After his hospitalization, he returned to Allisonville and continued receiving care. *Id.*

A month later, Mr. Gray went to the bathroom without alerting nurses and fell in his room. Dkt. 74-3 at 38. Deborah Godfrey, Mr. Gray's daughter, had frequently complained about the lack of floor mats in the room. Dkt. 74-2 at 65 (Godfrey Dep. 65:15–22). Nursing staff then put his bed "in a low

position with fall mattress in place," dkt. 74-3 at 38, and specific interventions were added to his care plan, dkt. 86 at 21. At the time of both falls, Allisonville's staffing levels were below national averages. Dkt. 86 at 95.

The day of his second fall, Mr. Gray's family "intercepted" his transport to dialysis and "had him go to the emergency room," where imaging studies revealed hip fractures. Dkt. 74-2 at 54–55 (Godfrey Dep. 54:8–55:5). Mr. Gray had surgery and did not return to Allisonville. *Id.* at 55–56 (Godfrey Dep. 55:7–56:3). On August 13, 2023, Mr. Gray died. Dkt. 74-2 (Godfrey Dep. 55:12–14). The cause of death noted was end stage renal failure, dkt. 86 at 74; Ms. Godfrey explained that "because we had to make the decision to stop his dialysis, he died," dkt. 74-2 at 57 (Godfrey Dep. 57:20–22).

**B. Mr. Wilder**

On June 30, 2023, Joseph Wilder was admitted to Riverwalk, a healthcare facility owned by HHC and managed by ASC. Dkt. 89 at 8; dkt. 79-2 at 1. Mr. Wilder transitioned to Riverwalk after he was hospitalized for cellulitis. Dkt. 79-3 at 23, 31 (Wilder Dep. 23:3–16, 31:10–13). His other pre-existing conditions included paraplegia, kidney disease, and ulcers on his lower extremities. Dkt. 79-2 at 2; dkt. 79-3 at 35–36, 49 (Wilder Dep. 35:22–36:16, 49:13–23).

While at Riverwalk, Mr. Wilder was designated a fall risk and required help changing bandages on his legs. Dkt. 79-2 at 2. He was hospitalized in August after he fell and broke his right leg while at Riverwalk. Dkt. 79-4 at 6–7. He did not receive timely wound dressing changes and slept in his

wheelchair due to problems with his mattresses. Dkt. 89 at 59–60, 65 (Wilder Dep. 37:14–38:11, 60:6–17). He had problems with a particular nurse, who is not a defendant in this case, because she did not change his bandages regularly. *Id.* at 65 (Wilder Dep. at 60:6–17). He did not ever refuse wound care. *Id.* at 68 (Wilder Dep. 64:2–15).

Riverwalk received a citation from the Department of Health and Human Services Centers for Medicare & Medicaid Services for failure to "ensure prompt wound care" for Mr. Wilder, and another for failure to "resolve resident council concerns related to long call light wait times and missing clothing items." *Id.* at 26–32. Riverwalk's staffing levels fell "below national averages" during the first three months of Mr. Wilder's residency. *Id.* at 92. Mr. Wilder currently resides at Riverwalk. Dkt. 79-2 at 1.

### C. Procedural history

Ms. Godfrey, administratrix of Mr. Gray's estate, and Mr. Wilder separately brought claims against HHC and ASC, dkt. 19; the cases have been consolidated, dkt. 21. Ms. Godfrey alleges that Allisonville's failure to provide adequate care planning, staff, and fall protocol violated the FNHRA and caused Mr. Gray's injuries. Dkt. 34 at 7–8. Mr. Wilder alleges that "Riverwalk's failure to properly change his bandages" and maintain adequate staff also violated the FNHRA and caused Mr. Wilder's infections and sepsis. *Id.* at 10. HHC and ASC filed separate motions for summary judgment on Ms. Godfrey's claims, dkt. 73, and on Mr. Wilder's claims, dkt. 76.

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584.

## III.
## Analysis

### A. *Monell* Liability Standard

"[A]ny person within the jurisdiction of the United States may invoke" 42 U.S.C. § 1983 to sue "any other person who, acting 'under color of' state law, has deprived them of 'any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 175 (2023). Under *Monell v. Dep't of Soc. Servs. of City of New York*, municipalities may be subject to liability for § 1983 violations. 436 U.S. 658 (1978). A municipality cannot be held vicariously liable under § 1983 for the actions of its agent or employee. *Los Angeles Cty. v.*

*Humphries*, 562 U.S. 29, 35–36 (2010) (explaining *Monell*, 436 U.S. 658). Rather, a municipality can be liable for only its own actions and corresponding harm. *Id.*

"In order to succeed on a *Monell* claim, a plaintiff must ultimately prove three elements: (1) an action pursuant to a municipal policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404–07 (1997)). "Because a municipality is only liable for deliberate conduct, the plaintiffs must [] show that . . . policymakers were deliberately indifferent as to the custom's known or obvious consequences." *Montano v. City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008); *see Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 655 (7th Cir. 2021) (stating a plaintiff can establish *Monell* liability by providing proof of "repeated deliberate indifference toward the plaintiff.").

Deliberate indifference "is a stringent standard of fault." *Brown*, 520 U.S. at 410. A plaintiff claiming municipal liability due to a defendant's inaction faces an even greater hurdle. *See J.K.J. v. Polk Cnty.*, 960 F.3d 367, 378 (7th Cir. 2020) ("[T]he path to *Monell* liability based on inaction is steeper because . . . a failure to do something could be inadvertent and the connection between inaction and a resulting injury is more tenuous."). A municipality may be liable for inaction if the municipality "has notice" that its inaction creates a

"'known or obvious' risk'" of violating a plaintiff's rights. *Id.* at 379. A municipality has notice if there is either a pattern or custom of similar violations or a need for training that is so obvious "that the municipality's failure to act can reflect deliberate indifference." *Id.* at 380; see *Est. of Tester v. Vill. at Hamilton Pointe, LLC*, 2026 WL 1083015, at *1, *9 (S.D. Ind. April 21, 2026) (requiring showing deliberate indifference for a *Monell* claim based on FNHRA violations).[1]

**B. Pattern or Practice**

Ms. Godfrey and Mr. Wilder first allege that HHC and ASC's failure to maintain adequate nursing staff levels and care protocols amounted to widespread practices that injured Mr. Gray and Mr. Wilder and deprived them of adequate medical care. Dkt. 34 at 6–8, 11–13. HHC and ASC argue that Ms. Godfrey and Mr. Wilder failed to show that HHC and ASC showed deliberate indifference to a pattern of violations of patients' rights. Dkt. 75 at 11–12. Plaintiffs respond that for Mr. Wilder's claims, evidence "would show multiple incidents and multiple affected persons" regarding staffing levels, dressing changes, and call lights. Dkt. 90 at 11–12. And they argue that "Mr. Gray suffered multiple incidents of [] 'deliberate indifference'" and that "[t]he

[1] Ms. Godfrey and Mr. Wilder briefly state, without support, that deliberate indifference "is not the *Monell* standard." Dkt. 87 at 13; dkt. 90 at 12. "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *United States v. Cisneros*, 946 F.3d 972, 978 (7th Cir. 2017); *see also Long v. Tchrs.' Ret. Sys. of Ill.*, 585 F.3d 344, 349 (7th Cir. 2009) ("A party may waive an argument" with "a one-sentence assertion that lacks citation to record evidence."). Thus, Plaintiffs' argument regarding the deliberate indifference standard is waived, and the Court applies the deliberate indifference standard as explained by Defendants. Dkt. 105 at 6-11; dkt. 106 at 2-7.

evidence of chronic understaffing known to facility leadership, awareness of policy requirements combined with failure to implement them, and failure to take corrective action after the June 6, 2022 fall create factual disputes about deliberate indifference." Dkt. 87 at 13.

Ordinarily, a single instance does not "come close to establishing the kind of pervasive custom that would give rise to [*Monell*] liability." *Wilson v. Cook Cnty.*, 742 F.3d 775, 780 (7th Cir. 2014). "[T]here is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability . . . [b]ut the plaintiff must demonstrate that there is a policy at issue rather than a random event." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

Here, Ms. Godfrey and Mr. Wilder designate no evidence of similar violations involving other residents at their respective nursing homes. Even though Ms. Godfrey argues that "Mr. Gray suffered multiple incidents of [] 'deliberate indifference,'" the designated evidence shows injury to one person, Mr. Gray. Dkt. 87 at 13. "[W]ithout any evidence of a pattern or practice, no reasonable jury could find that [Mr. Gray's injury] occurred as a result of any municipal policy, express or implied." *Helbachs Cafe LLC v. City of Madison*, 46 F.4th 525, 530 (7th Cir. 2022).

Mr. Wilder argues that Riverwalk's Center for Medicare and Medicaid Services report shows a pattern, but that report only highlights the facility's need to improve responses to its resident council and lists five residents who complained about "long call wait times and missing clothing items." Dkt. 89 at

30–32. The report does not "point to others who have suffered the [] injuries [Mr. Wilder] has as a result of the custom." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 599 (7th Cir. 2019). While residents experienced long wait times, Mr. Wilder experienced a lack of wound care that forced him to sit for hours with "weeping and bloody" open wounds. Dkt. 89 at 27. The report therefore cannot be used to show a pattern of the type of injuries Mr. Wilder suffered. Moreover, a general report that does not criticize the actual policy at issue or mention potential legal violations cannot constitute evidence of deliberate indifference. *Ruiz-Cortez*, 931 F.3d at 599–600.

Similarly, evidence of understaffing, standing alone, does "not adequately support a claim for *Monell* liability." *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 618 (7th Cir. 2022). Plaintiffs' expert witness opined that "[t]he fact that [Mr. Gray] experienced two falls" and "the pattern of failures in Mr. Gray's care" showed that Allisonville had inadequate staffing which "made it impossible to provide Mr. Gray with the level of supervision and assistance he required to prevent falls." Dkt. 86 at 57–58. That opinion, however, does not extend beyond Mr. Gray and does not show that Allisonville or Riverwalk intentionally unstaffed their facilities or acquiesced to it. *See Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 675 (7th Cir. 2009) ("If the same problem has arisen many times *and the municipality has acquiesced in the outcome*, it is possible (though not necessary) to infer there is a policy at work." (emphasis added)).

To start, while designated evidence shows that Allisonville and Riverwalk "struggle[ed] to maintain adequate medical staffing levels," Ms. Godfrey and Mr.

Wilder "do not connect this purported municipal practice to any [other resident's] injury." *Stockton*, 44 F.4th at 618; *see* dkt. 86 at 95; 89 at 73. Without a pattern of similar violations, Mr. Godfrey's and Mr. Wilder's harms—unfortunate as they are—are not enough to reasonably infer that HHC and ASC "approved, acquiesced, or encouraged" inadequate care. *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008); *see also Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1102 (7th Cir. 1990) ("[M]erely because a § 1983 plaintiff can point to something a [municipality] could have done to prevent the unfortunate incident does not condemn the procedures the [municipality] did undertake as deliberately indifferent.").

To the contrary, the undisputed designated evidence shows that ASC maintained policies about skilled nursing services and staffing at both Allisonville and Riverwalk. *See* dkt. 79-2 at 2–4; dkt. 79-6 at 24–26 (Hamilton Dep. 24:9–26:2); dkt. 74-1 at 62 (Patel Dep. 62:13–22); dkt. 74-3 at 4. Supervisors at both facilities coordinated and nursing staff completed annual trainings on these policies. Dkt. 74-1 at 25–27 (Patel Dep. 25:14–27:6); *see* dkt. 79–6 at 28–29 (Hamilton Dep. 28:16–29:8). And when confronted with issues, HHC and ASC consistently tried to improve operations, including hiring staff, enhancing staff education, amending Mr. Gray's care plan, and improving Mr. Wilder's experience with nurses. Dkt. 74-1 at 62–63 (Patel Dep. at 62:2–63:1); dkt. 89 at 26–32; dkt. 86 at 21; dkt. 79-3 at 63 (Wilder Dep. at 63:20–25).

These efforts distinguish Mr. Gray's and Mr. Wilder's injuries from the rare case when one violation is an obvious culmination of deliberate indifference. *See, e.g.*, *J.K.J.*, 960 F.3d at 386 (upholding a finding of liability where the county chose "to stand idly by while the female inmates under its care were exposed to an unmistakable risk that they would be sexually assaulted"); *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 922 (7th Cir. 2004) ("Despite the explicit recognition that the risk of suicide presented a unique and critical problem in a jail, the evidence at trial showed that [defendant] routinely failed to comply with its own directives on how risks were assessed and monitored."). So the single instances here do not allow a reasonable jury to find that ASC and HHC made a "conscious choice" to provide deficient medical care. *Rice v. Corr. Med Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). "To hold otherwise would significantly expand *Monell* and lead us down the road to vicarious liability." *Bohanon v. City of Indianapolis*, 46 F.4th 669, 677 (7th Cir. 2022).

Finally, Ms. Godfrey and Mr. Wilder argue that HHC and ASC's failure to follow their own policies showed "deliberate indifference to residents' federal rights." Dkt. 87 at 11–13; dkt 90 at 10–14. Ms. Godfrey points to Allisonville's Fall Management Policy and argues that the implemented care plan did not respond to Mr. Gray's specific needs as required by the policy. Dkt. 87 at 11. Plaintiff's expert witness opined that Mr. Gray's care plan was "generic and non-specific", while failing, for example, to include Mr. Gray's "need for two-person extensive assistance for all transfers and mobility." Dkt. 86 at 55.

Even assuming that Allisonville did not properly implement its own policy by failing to develop an individualized care plan for Mr. Gray, "municipal inaction that merely makes 'a violation of rights more likely' cannot alone show liability." *Orozco v. Dart*, 64 F.4th 806, 826 (7th Cir. 2023). Furthermore, *Monell* liability cannot be established based solely on employees' errors and failures to follow policy. *Bradich ex rel. Est. of Bradich v. City of Chicago*, 413 F.3d 688, 690 (7th Cir. 2005) ("None of Chicago's policies is constitutionally inadequate . . . [Plaintiff's] argument, rather, is that Chicago did not ensure that all of its employees followed all of its policies all of the time. That theory of liability is incompatible with *Monell*."). Allisonville's failure to follow its Fall Management Policy in Mr. Gray's case does not demonstrate that Allisonville "*systematically* fails to enforce its written policies and instead maintains informal policies" that violate patients' rights. *Id.* (emphasis original). Because no reasonable jury could find that HHC and ASC were deliberately indifferent to the effects of a custom or practice that violated patients' rights, *Monell* liability cannot be established on this basis.

**C. Failure to Train**

Ms. Godfrey and Mr. Wilder also argue that HHC and ASC can be liable under *Monell* for failing to supervise and train nursing staff. Dkt. 87 at 13. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Liability for failure to train requires either a

showing of deliberate indifference to a plaintiff's rights, *Bohanon*, 46 F.4th at 675, or that the "pattern of tortious conduct by inadequately trained employees . . . rather than a one-time negligent administration or factors peculiar to the [employee], is the moving force behind the plaintiff's injury." *Brown*, 520 U.S. at 407–08. Because, as discussed above, there was no pattern or customary practice that caused Mr. Gray's or Mr. Wilder's injuries, Ms. Godfrey and Mr. Wilder must prove that HHS and ASC showed deliberate indifference in failing to train their staff. *Ruiz-Cortez*, 931 F.3d at 599 ("Municipal failure claims are thus available only in 'limited circumstances,' and they are subject to 'rigorous' fault and causation requirements.").

Mr. Wilder contends that he received inadequate care not just from one nurse who did not regularly change his dressings as she was required to, but also other nurses who "refused to assist him" as well as "numerous employees across the facility" who failed "to provide assistance with activities of daily living." Dkt. 90 at 13. He has not designated evidence, however, that Defendants failed to train staff. HHC and ASC designate evidence that staff receive annual training followed by tests conducted after each training session. Dkt. 74–1 at 25–26 (Patel Dep. 25:14–26:3). New staff were trained on residents' rights and "skills checklists" were completed every month once staff finished orientation. Dkt. 74-1 at 81 (Patel Dep. 81:6–25).

Mr. Wilder and Ms. Godfrey do not dispute that ASC staff received training, *see* dkt. 91 at 13; dkt. 88 at 13, but argue that the training ASC staff received was inadequate. Dkt. 90 at 14; Dkt. 87 at 14. But even with the

Centers for Medicare & Medicaid Services report "indicat[ing] that staff required training and/or retraining on aspects [of] resident care and customer service," dkt. 91 at 13, this will not "suffice to prove that an injury or accident could have been avoided if an officer had had better or more training . . . And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable." *Lapre v. City of Chicago*, 911 F.3d 424, 437 (7th Cir. 2018). Plaintiffs have not provided evidence showing known deficiencies were intentionally overlooked such that Defendants can be subject to *Monell* liability. *Id.* ("That there may have been lapses in training . . . is not sufficient to allow an inference of deliberate indifference . . .").

Because no reasonable jury could find that HHC and ASC acted with deliberate indifference in failing to adequately train staff, HHC and ASC are entitled to summary judgment on Ms. Godfrey's and Mr. Wilder's failure to train claims as well.[2]

## IV.
## Conclusion

Defendants' motion for summary judgment on Ms. Godfrey's claims is **GRANTED.** Dkt. [73]. Defendants' motion for summary judgment on Mr. Wilder's claims is also **GRANTED.** Dkt. [76].

---

[2] Since Ms. Godfrey and Mr. Wilder cannot establish *Monell* liability, the Court does not address HHC and ASC's argument that the FNHRA provisions plaintiffs rely on are unenforceable under § 1983. *See* Dkt. 75 at 15–25.

Defendants' motions to exclude Plaintiffs' experts' testimony are **DENIED** as moot. Dkt. [112]; dkt. [114].

The Clerk shall docket a copy of this order in case 1:24-cv-00557-TWP-MKK. Final judgment in this case and in case 1:24-cv-00557-TWP-MKK will issue in a separate entry.

**SO ORDERED.**

Date: 9/30/2026

James Patrick Hanlon

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel